IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED

MAY - 5 2009

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

WILLIAM E. CAMPBELL,          )
                             )
     Plaintiff,              )
                             )
v.                           )
                             )      1:07cv675 (LMB/JFA)
PETE GEREN, Acting Secretary, )
     Department of the Army,  )
                             )
     Defendant.             )

MEMORANDUM OPINION

Before the court is defendant's Motion to Dismiss. For the
reasons stated in open court, as supplemented by this Memorandum
Opinion, the motion will be granted.

I. Background

Plaintiff William E. Campbell ("Campbell"), an African-
American male proceeding pro se, began his employment with the
Army as a Civil Service Engineer at Fort Belvoir, Virginia in
February 1987. In 2000, he took a special assignment at Fort
Lewis, Washington, where he had a lead role until 2004. In 2003,
Colonel Charles McMaster became Campbell's "de facto supervisor."
McMaster also hired Alfred Bergeron, a retired army colonel, as a
contractor to support the operations in Fort Lewis.

According to the Amended Complaint, in April 2004, McMaster
cut Campbell's funding, told management that Campbell would not
serve on his staff as of May 29, 2004, and promoted Bergeron to
serve as director of Fort Lewis operations, effectively replacing
Campbell. Campbell remained at Fort Lewis in a reduced role

after securing funding from other sources.  Once McMaster learned
of this, according to Campbell, he attempted to "obstruct"
Campbell's continued employment.

Campbell claims that McMaster and Bergeron conspired against
him, motivated in part by his race and age.  Specifically, he
alleges that on June 27, 2004, Bergeron wrote McMaster a memo
claiming that Tamara Harris, a recently hired employee, told him
that Campbell had sexually harassed her.  Harris met with a
representative of Fort Lewis's Equal Employment Opportunity (EEO)
office on July 13, 2004; according to Campbell, she did so upon
urging by McMaster and Bergeron.  According to Campbell, although
Harris never filed a formal complaint against him, on July 27,
2004, the Army assigned Tom Newsome to conduct an investigation
of Harris' allegations pursuant to Army Regulation 15-6 (the "15-
6 investigation").  In October 2004, upon the culmination of the
15-6 investigation, the Army proposed to suspend Campbell for 5
days.  Campbell disputed the harassment charges and appealed the
proposed suspension.  Campbell claims that in November 2004, he
was told that new allegations of harassment had surfaced against
him, and that he should "stand down" from his scheduled appeal
while the agency conducted further investigation.  Campbell did
so.

In January 2005, Campbell was told he was being reassigned
to Fort Belvoir, where he reported in February 2005.  In

-2-

December 2005, Campbell filed an EEO complaint regarding
employment discrimination in a matter at Fort Belvoir that was
unrelated to any of the issues regarding his employment at Fort
Lewis.  That matter was resolved in February 2006 through an
alternative dispute resolution (ADR) process.[1]

After completing its investigation of the sexual harassment
allegations against Campbell, the Army proposed to suspend him
for 30 days, based on findings that, among other things, Campbell
committed at least six distinct acts of harassment and "repeated
[his] actions on many occasions with multiple women."  Although
such conduct could have been cause for removal, given Campbell's
work history, the Army found that a 30-day suspension was more
appropriate.  Campbell timely filed a memorandum opposing the
proposed suspension.  On August 28, 2006, Dr. Geraldo Melendez
issued a final decision reducing Campbell's suspension to 28
days, effective September 5, 2006.  Melendez's decision
authorized Campbell to appeal the suspension to the Merit Systems
Protection Board (MSPB) within 30 days of the effective date.
Melendez's decision also notified Campbell that if he believed
that the disciplinary action was a result of discrimination, he
could either include the allegations of discrimination as part of
a "mixed appeal" to the MSPB, or he could bring the

---

[1]This proceeding is only relevant to this action because, in
Count 6, Campbell alleges that the Army retaliated against him
because of the December 2005 complaint.

-3-

discrimination claim separately to the Fort Belvoir EEO office, in which case he was required to file his complaint within 45 days.  Campbell was notified that his choice on this point would be a binding choice of forum.

In September 2006, Campbell served the suspension.  On October 5, 2006, he filed a timely mixed appeal with the MSPB in which he included allegations that he was discriminated against on the basis of race and age.  The mixed appeal included allegations dating back to May 2004, when, according to Campbell, McMaster "attempted to replace" him without cause, "attempted to dissuade" other project managers from working with him, and ultimately engineered the investigation that culminated in the suspension.

On November 27, 2006, Campbell and the Army conducted a prehearing conference with an administrative judge (AJ) at the Northeastern Regional Office of the MSPB.  According to Campbell's opposition to the defendant's Motion to Dismiss, the AJ "separated" the discrimination claims from the procedural ones, and told Campbell that his discrimination claims could be better addressed by the EEO office.  According to Campbell, when he asked the AJ to formally remand the discrimination matters to the EEO office, he was told that he could simply take the claims directly to the EEO.

On December 1, 2006, Campbell and the Army entered into a

-4-

settlement agreement under which his suspension was reduced to 19 days.  Campbell certified in the agreement that he had the opportunity to consult with a representative.[2]  The settlement agreement included the following relevant language:

> 1. In order to avoid the possibility of future disputes and protracted litigation . . . the Command and Control Directorate Communications-Electronics, Research, Development and Engineering Center, Fort Monmouth, New Jersey . . . agrees to the following with Mr. William Campbell . . .
>
> 10. Employee agrees to waive all grievance and appeal rights, including appeals to the Merit Systems Protection Board (MSPB).  In addition, the Employee agrees to waive all Equal Employment Opportunity (EEO) rights related to the relevant issues of MSPB Appeal Docket No. PH-0752-07-0011-I-1.[3]
>
> 12. This Agreement contains the entire understanding between the Employee and the Agency with respect to this matter.  The parties understand the terms of this Agreement.  The parties voluntarily enter into this Agreement.

Pursuant to the settlement agreement, the AJ dismissed Campbell's MSPB appeal on December 13, 2006.  The order of dismissal authorized appeal rights to the full MSPB board and to the United

---

[2]As explained during oral argument, that representative was not a lawyer but merely a friend Campbell brought along for moral support.

[3]Paragraph 10 included handwritten changes to the second sentence, which apparently went through three iterations.  The original, typewritten version stated that Campbell agreed to waive "all Equal Employment Opportunity (EEO) complaints of the Agency's action up to and including the date of this Agreement."  An initial handwritten revision that was crossed out stated the Campbell was waiving all EEO rights "related to the matters raised in the instant appeal."  The final handwritten version is quoted above.

States Court of Appeals for the Federal Circuit.

On December 11, 2006 and then again on January 12, 2007, Campbell attempted to take his discrimination claims to the Fort Belvoir EEO office.  However, Campbell was informed that any EEO complaints at this point were either time-barred by the 45-day statute of limitations, or barred by the settlement agreement. Campbell never filed a formal EEO complaint before filing this civil action, aside from his unrelated EEO complaint in December 2005 that was resolved through ADR.[4]

In January 2007, Campbell filed a timely petition for review of the AJ's dismissal of his MSPB appeal - the dismissal to which he had agreed under the settlement agreement.  His primary assertion was that the settlement agreement resulted in the EEO improperly rejecting his discrimination claims, and that notwithstanding the above-quoted language in Paragraph 10 of the settlement agreement, he believed that he would be able to raise at least some of his discrimination claims before the EEO. Campbell stated that he had initially submitted a timely mixed appeal to the MSPB, and only went to the EEO after the AJ determined that the EEO office should handle any discrimination allegations.  Campbell also alleged that the settlement agreement

---

[4]In his opposition, Campbell also states that after he filed this action, he filed two separate EEO complaints, which are currently pending before the EEO office, alleging that he was "passed over multiple times for promotions."  Pl.'s Opp. ¶ 5. These complaints do not relate to the allegations in this action.

was not voluntary because the AJ had pressured him into settling, in part by emphasizing that if the action were not settled, the agency could file criminal charges against him as a result of the harassment charges.  Campbell also asserted that he had not been reimbursed for his salary for the nine days by which his settlement had reduced the suspension.[5]  He sought remand of the discrimination claims to the EEO office, vacateur of the settlement agreement, and remand of the remainder of his original MSPB appeal back to the AJ.

On April 4, 2007, the MSPB denied Campbell's petition on the grounds that there was no significant new evidence and no error of law in the dismissal.  The MSPB review board authorized Campbell to petition for review in the Federal Circuit.[6]

In May 2007, Campbell filed a complaint with the Equal

---

[5]The MSPB remanded the salary claim to the AJ, deeming it to be a request to enforce the settlement agreement and not to review it.  The AJ dismissed this claim on July 11, 2007 after the Army put forth unrebutted evidence that it did reimburse Campbell.

[6]A petition for review of a mixed MSPB appeal normally would go to a federal district court, 5 U.S.C. § 7703(b)(2), not the Federal Circuit, which only has jurisdiction to hear petitions for review of MSPB appeals that do not involve allegations of discrimination, id. § 7703(b)(1).  However, Campbell was apparently directed to the Federal Circuit because the MSPB did not adjudicate the merits of his discrimination claim; rather, the MSPB merely dismissed his appeal because the matter had been settled.  See Ballentine v. Merit Systems Protection Bd., 738 F.2d 1244, 1247 (Fed. Cir. 1984) (holding that the Federal Circuit has jurisdiction over MSPB decisions that do not decide discrimination issues on the merits).

Employment Opportunity Commission (EEOC), claiming that the MSPB should have considered the mixed case appeal as a whole or remanded the discrimination claim to the EEO.  In June 2007, the EEOC denied review of the MSPB claim and issued a right-to-sue letter.  The EEOC denial stated that because Campbell had settled his dispute with the Army, the EEOC lacked any jurisdiction over his claims.

## II. The Complaint at Issue.

On July 13, 2007, Campbell filed his initial pro se Complaint.  After Campbell filed an application to proceed in forma pauperis, the Court issued an order characterizing the case as an appeal of a decision by the MSPB and transferred the case to the Federal Circuit.  In a footnote in that opinion, the Court noted that it could not exercise jurisdiction over the action despite the presence of Title VII claims because Campbell had not pled that he had exhausted administrative remedies or attached a right-to-sue letter from the EEOC.  On October 27, 2008, the Federal Circuit ordered the action remanded to this court, and the remand was effected on January 15, 2009.  On January 16, 2009, Campbell filed an Amended Complaint alleging nine counts, including two due process claims and seven claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"):

Count 1 (Title VII) alleges hostile work environment

-8-

harassment by McMaster at Fort Lewis from November 2003 through February 2005.

Count 2 (Title VII) alleges discriminatory transfer on account of race from May 2004 through February 2005, when McMaster, motivated in part by race, allegedly "undertook illegal measures to remove Campbell from his employment at Ft. Lewis." Am. Compl. ¶ 44.

Count 3 (Title VII) alleges discriminatory investigation on account of race by McMaster and others, whose 15-6 investigation of Campbell, which began in June 2004, was allegedly motivated in part by race.

Count 4 (Due Process) alleges that when Melendez issued his final order of suspension on August 28, 2006, he ignored Campbell's right to review and appeal of all evidence used in deciding an adverse administrative action.

Count 5 (Title VII) alleges discriminatory investigation on account of race by Tom Newsome, who, according to the Complaint, "eschewed required procedures, generated reports that contained erroneously recorded testimony, altered dates on reports, and recommended that Campbell be terminated." Am. Compl. ¶ 55.

Count 6 (Title VII) alleges that in March 2006, less than a month after Campbell participated in ADR regarding his unrelated Fort Belvoir EEO claim, the Army proposed to

-9-

suspend Campbell for 30 days in retaliation for filing the
EEO complaint.

Count 7 (Title VII) alleges that because Campbell did not
accept the initial 5-day suspension and planned an appeal,
the Army retaliated against him by soliciting additional
support, fabricating new evidence, and proposing to suspend
him for 30 days and ultimately for 28.

Count 8 (Title VII) alleges that before and after his
departure from Fort Lewis in early 2005, Campbell inquired
about similarly situated employment and McMaster acted to
prevent him from getting such employment, motivated in part
by racial animus.

Count 9 (Due rocess) alleges that because Campbell refused
to accept the adverse action and "let it be over with," the
Army withheld and failed to disclose critical evidence that
would have "impugned nearly all of the allegations" against
him.   Am. Compl. ¶ 72.

The defendant has filed a filed a motion, styled as a motion
to dismiss or alternatively for summary judgment, on four
grounds, only two of which are necessary to address here.  First,
the defendant argues that any discrimination claim that is not
covered by the settlement agreement is barred for failure to
exhaust administrative remedies.  Second, the defendant asserts
that the settlement agreement bars Campbell from asserting any

-10-

claims related to his suspension.[7]

### III. Standard of Review.

As to its two substantive arguments, defendant's motion appears to be a motion to dismiss for failure to state a claim under Rule 12(b)(6).  In reviewing a Rule 12(b)(6) motion to dismiss, a court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations, and construes facts in the light most favorable to the plaintiff.  See Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000).  However, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted).

Although the defendant's motion will be treated as a 12(b)(6) motion to dismiss, certain documents in addition to the Amended Complaint have been considered in evaluating the motion.

---

[7]The defendant also argues that the Court lacks subject matter jurisdiction to review the settlement agreement for any allegations of breach, and lacks personal jurisdiction over the defendant because Campbell has not properly served the United States Attorney, the Attorney General, or the Secretary of the Army.  Because the two grounds discussed in this opinion are sufficient to grant the defendant's motion to dismiss, these other grounds will not be discussed.

A court may consider material outside the pleadings without converting a Rule 12(b)(6) motion to one for summary judgment if the material is "integral to and explicitly relied on in the Complaint" and if the plaintiff does not challenge its authenticity.   Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999); see also Gasner v. County of Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995) (holding that official public records may also be considered as long as they are of unquestioned authenticity).   Specifically, the settlement agreement between the parties, a memorandum that summarized the events of the prehearing conference on November 27, 2006 ("prehearing memorandum"), and Campbell's initial appeal filed with the MSPB have been considered because they are explicitly referenced in the Amended Complaint (settlement agreement, Am. Compl. ¶¶ 29-30; prehearing conference, id. ¶ 28; MSPB appeal, id. ¶ 27), and Campbell has not questioned the authenticity of any of the documents.

### IV. Discussion.

#### A. Failure to Exhaust Administrative Remedies.

The claims in Count 1, which alleges hostile work environment harassment at Fort Lewis from November 2003 through February 2005, Count 2, which alleges discriminatory transfer on account of race in May 2004 through February 2005, and Count 8, which alleges that in early 2005, McMaster prevented Campbell

-12-

from getting similarly situated employment, were not exhausted administratively and, therefore, will be dismissed.

Before raising a Title VII claim in federal court, a plaintiff must exhaust administrative remedies. Laber v. Harvey, 438 F.3d 404, 415-17 (4th Cir. 2006) (discussing the administrative remedy process for federal employees). A federal employee does so by first contacting an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).[8] If, after meeting with a counselor, the employee wishes to continue with the complaint process, he or she must file a formal complaint, which the agency must investigate. Id. § 1614.106. If the EEO office concludes there was no discrimination, it issues a final agency decision. Id. § 1614.110. The employee may then appeal that decision to the EEOC, id. § 1614.401(a), or may opt to file a civil action within 90 days, id. § 1614.407(a).

Alternatively, an employee who believes that he has been subjected to an adverse personnel decision that was based in part

_____

[8]An agency or the EEOC must "extend the 45-day time limit . . . when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the [EEOC]." 29 C.F.R. § 1614.105(a)(2).

on the employee's race may include allegations of discrimination as part of a "mixed case appeal" to the MSPB.  Id. § 1614.302(a)(2).  A choice to pursue a mixed case appeal, rather than filing a separate claim with an EEO office, is a binding election of remedies.  Id. 1614.302(b).  A final decision by the MSPB in a mixed case appeal may be reviewed by the EEOC, or the employee may file a civil action in a federal district court.  5 C.F.R. § 1201.157.

Here, with regard to discrimination allegations relating to his suspension, Campbell timely filed a mixed case appeal to the MSPB.  However, nowhere in his Complaint or in his opposition to the Motion to Dismiss does Campbell allege, nor can he, that he timely pursued any administrative remedies regarding the allegations in Counts 1, 2, and 8 of the Amended Complaint, none of which relate to his suspension.  By his own admission, Campbell first raised the issue of past discriminatory conduct as part of the MSPB appeal of his suspension on October 5, 2006. This was well after any claims relevant to counts 1, 2, and 8, all of which concerned conduct that occurred between 2003 and 2005, were already time-barred.  After the settlement of his case with the MSPB, he attempted to bring these claims before the EEO, which "informed" him that these claims were time-barred because the events underlying the claims occurred well before the 45 days preceding the date he approached the EEO.  Moreover, any claim

-14-

Campbell would have filed concerning conduct between 2003 and 2005 would have been long-since time-barred by October 2006.[9] For these reasons, Counts 1, 2, and 8 will be dismissed for failure to exhaust.

### B. Settlement Agreement.

The remainder of Campbell's claims will be dismissed because he agreed in the settlement agreement not to pursue any claims related to his suspension.  Specifically, under Paragraph 10, Campbell "agree[d] to waive all grievance and appeal rights, including appeals to the Merit Systems Protection Board (MSPB) . . . [and] all Equal Employment Opportunity (EEO) rights related to the relevant issues of MSPB Appeal Docket No. PH-0752-07-0011-I-1."

Campbell argues that the waiver does not bar his discrimination claims because "[t]he wording in paragraph 10 of the settlement agreement was specifically changed to ensure that plaintiff retained all rights to pursue his unlawful Title VII discrimination claims."  Pl.'s Opp. ¶ 3.  Campbell relies on the pre-hearing conference in November 2006, when the AJ allegedly severed all discrimination claims from Campbell's MSPB appeal.

---

[9]At oral argument, Campbell suggested that he believed that the 45-day statute of limitations for his discrimination claims might have been tolled because he only became aware of the possible existence of past racial discriminatory after his suspension.  However, even if the statute of limitations had been tolled, he has failed to exhaust administrative remedies because he never filed an EEO complaint.

Given that severance, Campbell claims that the phrase "rights related to the relevant issues of [his MSPB appeal]" specifically excluded any claims related to discrimination. Campbell also appears to rely on the handwritten changes made to the settlement agreement, which show that the waiver in Paragraph 10 was changed twice. The original text would have waived "all EEO complaints of the Agency's action up to and including the date of this agreement." It was then revised to waive "all EEO rights related to the matters raised in the instant appeal." It was then revised again to limit the waiver to "all EEO rights related to the relevant issues of [the appeal]." Campbell asserts that the final text preserved his ability to bring claims of discrimination related to his suspension.

Even if Campbell's argument were accepted, it would not save Counts 4 and 9 of the Amended Complaint, which explicitly allege only Due Process violations and not discrimination claims. As such, Counts 4 and 9 are clearly covered by the broad waiver of "all grievance and appeal rights" in Paragraph 10, and are unaffected by the sentence on EEO rights.

The remainder of the counts, which do allege claims of discrimination in connection with Campbell's suspension, will also be dismissed because they too are barred by the settlement agreement. When a contract contains an integration clause and is clear on its face, that contract should be construed without

-16-

resorting to parol evidence.  Moreover, parol evidence cannot be

used "to create ambiguity where none exists."  <u>In re BNX Systems</u>

<u>Corp.</u>, No. 07-1820, 2009 WL 275105, at *2 (4th Cir. 2009); <u>see</u>

<u>also</u> <u>Cohan v. Thurston</u>, 292 S.E.2d 45, 46 (Va. 1982) (holding

that "[p]arol evidence cannot be used to first create an

ambiguity and then remove it").  Here, paragraph 12 of the

settlement agreement, which states that the agreement "contains

the entire understanding between the Employee and the Agency with

respect to this matter," is clearly an integration clause.  As

such, if the contract is unambiguous, it must be interpreted

without the use of parol evidence.

Despite Campbell's argument to the contrary, Paragraph 10 is

not ambiguous.  Paragraph 10 clearly waives any EEO claims

concerning the issues raised in Campbell's appeal of his

suspension.  Even if, as Campbell alleges, the parties agreed

that the MSPB would not adjudicate Campbell's discrimination

claims,[10] once the parties settled the dispute, the settlement

---

[10]The prehearing memorandum, which summarizes the conference
held by the parties on November 27, 2006, states that the parties
agreed that the five "issues to be discussed at the hearing"
would be: 1) "whether the charges can be sustained," 2) "whether
the action promotes the efficiency of the service," 3) "whether
the penalty was reasonable," 4) "whether the Agency 15-6
investigation was improper and resulted in harmful procedural
error," and 5) "whether the Agency took the . . . suspension . .
. in reprisal for [Campbell's] appealing a proposed 5-day
suspension and for participating in [ADR] involving hiring
practices."  The Court does not find that this memorandum
supports Campbell's allegation that the hearing would not have
addressed his discrimination claims.  To the contrary, the third

-17-

barred them from any further litigation concerning Campbell's suspension.  As such, the remainder of Campbell's claims, all of which concern the suspension, will be dismissed.

### V. Conclusion.

For the above reasons, defendant's Motion to Dismiss will be granted by an Order to be issued with this Memorandum Opinion.


Entered this 5 day of May, 2009.


Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

---

"issue[] to be discussed" indicates that the hearing would address whether the investigation of Campbell was "improper."  If the investigation was motivated by discrimination, it could not have been proper.

-18-